UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIGUEL CHARLES JOYNER,<br><br>     Petitioner,<br><br>  v.<br><br>RANDY BLADES,<br><br>     Respondent. | Case No. 1:15-cv-00489-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Petitioner Miguel Charles Joyner filed a Petition for Writ of Habeas Corpus challenging his state court conviction and sentence. (Dkt. 3.) All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 11.)

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is

**MEMORANDUM DECISION AND ORDER - 1**

unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

### REVIEW OF PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL

Petitioner has filed a Motion for Appointment of Counsel. (Dkt. 20.) He provides no particular reasons in support of his motion, but the Court has considered that Petitioner is not a lawyer and has few legal resources available to him in prison.

There is no constitutional right to counsel in a habeas corpus action. *Coleman v. Thompson,* 501 U.S. 722, 755 (1991). A habeas petitioner has a right to counsel, as provided by rule, if counsel is necessary for effective discovery or if an evidentiary hearing is required in his case. *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases. In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on a petitioner's ability to articulate his claims in light of the complexity of the legal issues and his likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

Preliminary procedural questions are currently at issue that require attention to factual matters, rather than legal matters. Petitioner has been notified that he must

**MEMORANDUM DECISION AND ORDER - 2**

provide adequate reason for the late filing of his Petition. *See* Dkts. 15-1 (explaining equitable tolling and actual innocence exceptions to statute of limitations) & 16 (notice of summary judgment and dismissal rule requirements). Presently, neither discovery nor an evidentiary hearing is needed. Therefore, Petitioner has not met the standards for appointment of counsel, and the motion will be denied.

## REVIEW OF MOTION FOR SUMMARY DISMISSAL

**1.     Standard of Law**

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to seek federal habeas corpus relief within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for

**MEMORANDUM DECISION AND ORDER - 3**

seeking such review."[1] 28 U.S.C. § 2244(d)(1)(A). One year means 366 days, for example, from January 1, 2000, to January 1, 2001. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to AEDPA).

Under 28 U.S.C. § 2244(d)(1)(A), the date of "finality" that begins the one-year time period is marked as follows, depending on how far a petitioner pursues his claim:

| **Action Taken** | **Finality Occurs** |
| --- | --- |
| No appeal is filed after state district court order or judgment | 42 days later, *see* Idaho Appellate Rule 14 |
| Appeal is filed and Idaho Court of Appeals issues a decision, but no petition for review is filed with the Idaho Supreme Court | 21 days later, *see* Idaho Appellate Rule 118 |
| Appeal is filed and Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and Petitioner does not file a petition for writ of certiorari with the United States Supreme Court | 90 days later, *see* United States Supreme Court Rule 13 |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, and the petition is denied | Date of denial |

---

[1] Several other triggering events for the statute of limitations exist—but are less common—and are set forth in subsections 2244(d)(1)(B)-(D).

**MEMORANDUM DECISION AND ORDER - 4**

| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, the petition is granted, and the United States Supreme Court issues a decision | Date of decision |
|---|---|

In each instance above, "finality" is measured from entry of the final judgment or order, not from a remittitur or mandate, which are mere formalities. *Gonzales v. Thaler*, 132 S.Ct. 641, 653 (2012); *Clay v. United States*, 537 U.S. 522, 529 (2003); *Wixom v. Washington*, 264 F.3d 894, 898 n.4 (9th Cir. 2001).

AEDPA also contains a tolling provision that stops or suspends the one-year limitations period from running during the time in "which a properly filed application for State postconviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). Because this particular statutory provision applies only to "pending" actions, the additional 21-, 42- and 90-day time periods associated with the calculation of finality after direct appeal are *not* applied to extend the tolling periods for post-conviction actions. However, unlike direct appeal "finality," the term "pending" *does* extend through the date of the remittitur.[2]

---

[2]     *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007). "Pending" is determined according to each particular state's law. In Idaho, an appellate case remains pending until a remittitur is issued. *See Cochran v. State*, 133 Idaho 205, 206, 984 P.2d 128, 129 (Idaho Ct. App. 1999).

**MEMORANDUM DECISION AND ORDER - 5**

The federal statute is *not* tolled between the date the direct appeal is "final" and the filing of a proper post-conviction application, or between post-conviction finality and any successive collateral review petition. *Id*. Each time statutory tolling ends, the statute of limitations does not restart at one year, but begins running at the place where it stopped before the post-conviction action was filed.

Once a federal statute of limitations has expired, it cannot be reinstated or resurrected by a later-filed state court action. *See Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

**2.     Background**

Petitioner originally was charged with the felony crimes of attempted strangulation, domestic violence, and violation of a no-contact order in a criminal action in the Fourth Judicial District Court in Ada County, Idaho. When he asserted his right to a speedy trial, and that issue presented novel and complex questions that could not be briefed before the speedy trial time period expired, the state district court permitted the State to dismiss the charges and refile them.

On January 27, 2009, the State refiled the felony charges, along with a second domestic violence charge. Petitioner moved to dismiss the new charges on speedy trial grounds, but the state district court denied the motion, and the case proceeded to trial.

After a jury trial, Petitioner was convicted of one count of domestic battery, one count of attempted strangulation, and of being a persistent violator. His judgment of conviction was entered on July 30, 2009, and he received prison sentences totaling 10 years determinate, with life indeterminate. He filed a direct appeal, heard as a consolidated action of his first and second sets of charges, which was unsuccessful. He also received no relief in his post-conviction actions.

3.   Discussion

The statute of limitations analysis begins with the Idaho Supreme Court's denial of Petitioner's petition for review on direct appeal on September 21, 2011. (State's Lodging B-9.) Petitioner did not file a petition for writ of certiorari with the United States Supreme Court; therefore, his judgment of conviction became final 90 days later, on December 20, 2011.

The federal statute of limitations began on December 20, 2011, and continued running for 107 days until Petitioner filed his state post-conviction petition on April 6, 2012 (mailbox rule date). (State's Lodging C-1.) The statute was tolled during the pendency of that action. The post-conviction action ended on October 14, 2014, when the Idaho Court of Appeals entered the remittitur following its decision affirming the dismissal of the post-conviction action. (State's Lodging D-7, D-8.) Petitioner did not file a petition for review before the Idaho Supreme Court.

**MEMORANDUM DECISION AND ORDER - 7**

The federal statute began running again on October 15, 2014, with 258 days remaining, and it expired on June 30, 2015. Petitioner's federal Petition for Writ of Habeas Corpus was filed on October 14, 2015 (mailbox rule), several months too late. Unless Petitioner shows that equitable tolling applies, or that he is actually innocent, his Petition must be dismissed with prejudice as untimely.

### A. *Equitable Tolling*

If a petition is deemed untimely, a federal court can hear the claims if the petitioner can establish that "equitable tolling" should be applied. In *Pace v. DiGuglielmo*, the Supreme Court clarified that, "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." 544 U.S. 408, 418 (2005). In addition, there must be a causal link between the lateness and the extraordinary circumstances. *See Bryant v. Schriro*, 499 F.3d 1056, 1061 (9th Cir. 2007) (holding that a petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence). The petitioner bears the burden of bringing forward facts to establish a basis for equitable tolling. *United States v. Marolf*, 173 F.3d 1213, 1318, n. 3 (9th Cir. 1999).

Petitioner's Response simply denies the assertion that his case was filed too late. (Dkt. 18, p. 6.) He filed his federal Petition exactly one year from the date his last state

**MEMORANDUM DECISION AND ORDER - 8**

court action concluded and believes that was a timely filing. However, he likely did not realize that the time between the conclusion of direct appeal and the filing of his state post-conviction petition also counted toward the federal limitations period, and that the limitations period did not restart at one year upon conclusion of the post-conviction matter.

Ignorance of the law without more, however, is not grounds for equitable tolling. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (a petitioner's "inability correctly to calculate the limitations period" and "lack of legal sophistication" are not "extraordinary circumstance[s] warranting equitable tolling")). This was the only potential factual basis for equitable tolling that appeared obvious from the record. Petitioner otherwise has chosen not to make an equitable tolling argument.

   **B.** ***Actual Innocence***

The United States Supreme Court has determined that there is an "actual innocence" exception to the AEDPA statute of limitations, and that the exception applies where a petitioner meets the rigorous actual innocence standard of *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). "'Actual innocence means factual innocence, and not mere legal insufficiency.'" *Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

**MEMORANDUM DECISION AND ORDER - 9**

To make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Perkins*, 133 S.Ct. at 1933 (quoting *Schlup*, 513 U.S. at 329). This exception is to be applied only in the "extraordinary" or "extremely rare" case. *House v. Bell*, 547 U.S. 518, 538 (2006); *Schlup*, 513 U.S. at 320-21.

Petitioner has made several arguments based on *legal* innocence: (1) the charges should not have been refiled because that violated his right to a speedy trial; and (2) improper and biased statements from jurors that were made during voir dire allegedly contaminating the jury pool. However, challenges to legal insufficiencies are not grounds for a showing of actual innocence.

Petitioner also offers the following facts to show his innocence:

> If I were able to take the stand I would've shown that there was no way I did anything to Ms. Lard because I was never in the house with her. And I was never placed in that house with her when I got home. No one was there. I showered, ate cold pizza, grabbed extra phone and walked to Overland Bar, where I was arrested. That's clear across town from Cole Road and Ustick. This alone would have raised reasonable doubt in a case that's basically a he said she said.

(Dkt. 18, p. 3 (grammar and punctuation regularized).) He further argues that the officer who responded to the scene had no medical training to identify strangulation marks on a victim's neck and should not have been permitted to testify about the neck bruising.

**MEMORANDUM DECISION AND ORDER - 10**

Petitioner is correct that there were no witnesses to what happened when he arrived home. Even had Petitioner testified, the jury would have had two additional factors to consider in deciding whether Petitioner was guilty beyond a reasonable doubt: (1) credibility of Ms. Lard and Petitioner; and (2) circumstantial evidence. As to credibility, had Petitioner testified, evidence of his prior convictions could have been admitted to impeach his credibility. The jury also would have questioned Petitioner's story that he "grabbed extra phone" before leaving to go to the bar, because, normally, two people living together would have only two phones—one for each of them—not "an extra phone."

The State had the following factors in its favor: (1) Ms. Lard told a story that made sense: she was tired of paying for everything for Petitioner without him contributing financially to their household, and she suspected him of having a relationship with another woman (which was confirmed at sentencing), and so she had packed up his few belongings and had planned to ask him to leave, but Petitioner was caught off-guard by that, especially Ms. Lard's final act of picking up an urn containing his deceased grandmother's ashes and telling him she didn't want it in the house any longer; (2) photographs showed Ms. Lard had bruising on her body corresponding to her description of the physical tussle and strangulation she alleged; (3) Ms. Lard called 911 directly after the incident, and officers described her affect as very distraught; (4) photographs of the

**MEMORANDUM DECISION AND ORDER - 11**

scene showed the packed-up belongings of Petitioner, a tipped over table, and a couch that had been pushed back; (4) Ms. Lard said Petitioner took her phone, and Petitioner was found with two phones, one of which was Ms. Lard's, when he was arrested; (5) after the incident, Petitioner told officers that his name was not Miguel, but officers demanded to see his identification, which showed that his middle name was Miguel. To counter these facts, Petitioner has not provided any corroborating evidence to support his side of the story.

    The jury heard that Ms. Lard had tampered with the crime scene by moving the urn, a large candle Petitioner allegedly had thrown at her, and a computer that had fallen off the table; her excuse was that she was trying to clean up for her mother's arrival and did not know she shouldn't have altered a crime scene. The jury also heard that Ms. Lard and Petitioner had floated the Boise River before the incident, an activity that could have caused her bruising. Petitioner's counsel also cross-examined the officer on the fact that Ms. Lard had only a few red marks low on her neck and no other signs of strangulation, such as blue lips or bloodshot eyes. Counsel also highlighted inconsistencies in Ms. Lard's reports of the incident to different officers.

    Based on the Court's review of the entire court record, including the trial transcript, and Petitioner's new allegations of actual innocence made in his filings in this action, the Court concludes that he has not made a persuasive argument of factual

**MEMORANDUM DECISION AND ORDER - 12**

innocence sufficient to meet the *Schlup v. Delo* standard. Therefore, his late filing is unexcused.

**4.      Conclusion**

The Petition for Writ of Habeas Corpus in this action was filed beyond the federal statute of limitations period. He asks, "Does anybody care about the [alleged Sixth Amendment] violation other than myself?" (Dkt. 18, p. 4.) Here, the issue is not whether anyone cares about constitutional violations, because most certainly the federal courts do, but rather the threshold procedural issue is whether Petitioner filed his Petition on time, because the Court is required to follow the procedural rules that govern habeas corpus actions.

Petitioner has not made an equitable tolling argument, and none is apparent from a review of the record. Petitioner has made an actual innocence argument, but it does not meet the *Schlup v. Delo* standard. Accordingly, the Court will dismiss the Petition with prejudice. The Court does not reach the procedural default issue.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Extension of Time to File Answer or Pre-Answer Motion (Dkt. 13) is GRANTED.

**MEMORANDUM DECISION AND ORDER - 13**

2. Respondent's Motion for Summary Dismissal (Dkt. 15) is GRANTED. The Petition (Dkt. 3) is DISMISSED with prejudice.

3. Petitioner's Motion for Appointment of Counsel (Dkt. 17) is DENIED.

4. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: March 21, 2017

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**